## THE CHRISTIANIA BAIRD.

(Circuit Court of Appeals, Second Circuit. May 2, 1910.)

### No. 215.

Towage (§ 11)—Collision Between Tows—Fault of Tug.

A tug passing down the Passaic river with a scow on one side and a schooner in tow on a hawser, *held* liable for a collision between the tows while passing through the draw of a railroad bridge, on the ground that the master failed to signal the bridge in time and while waiting for the opening of the draw after the passing of trains permitted the tug to drift too near the bridge and too close to one side, by reason of which the scow struck the trestle on that side, breaking the lines and causing the collision with the following schooner.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 19; Dec. Dig. § 11.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
180 F.—45

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Mary F. Schultz against the steam tug Christiania Baird; the Passaic River Towing Line, claimant. Decree for libelant (169 Fed. 217), and claimant appeals. Affirmed.

Martin A. Ryan, for appellant.
Peter Alexander, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. February 14, 1907, the tug Christiania Baird, bound down the Passaic river from Newark to Hoboken with the light barge Brimstone on her port side and the light schooner Annie E. Webb astern on a hawser about 125 feet long, approached the trestle bridge of the Central Railroad of New Jersey which spans Newark Bay between Bayonne and Elizabethport. There is an abutment in the center of the channel dividing the bridge into two draws, the floor over either of which can be lifted after the manner of bascule bridges by machinery on the abutment. The tide was running strong ebb with a set to the westward. The semaphore on the abutment indicated that vessels bound down should go through the eastern draw. The regulations of the Secretary of War require vessels wishing the draw opened to blow a signal of three blasts, and the bridge tender to answer with a signal of three blasts, if it can be done, or two blasts if it cannot. When about a quarter of a mile away and proceeding with the tide about six miles an hour, the tug blew three blasts. Receiving no answer, and seeing two trains about to cross the bridge in opposite directions, she slowed down. When they had passed she started up and blew a second signal of three blasts, to which she received no answer. Seeing another train approaching from the west, the tug when about 600 feet above the bridge slowed down again and drifted. The draw was opened when she was about 150 to 200 feet off and a little to the eastward of the center of the draw in order to counteract the set of the tide. It being impossible to stop and round to, the tug started up under a jingle bell with her helm hard aport, but having no steerageway. The barge struck the trestle on the eastern side, parting the lines to the tug, swung around into the draw while the schooner, the tug having cast off her hawser, ran into the barge and swung around under the influence of the tide against the trestle to the east of the draw, sustaining the damage complained of.

The trial judge found that the draw was open in time and that the tow would have passed through safely, but for the fact that the tug had kept too far to the eastward, as the result of over estimating the set of the tide. We think she was more at fault for not signaling sooner and stopping. If negligent in both or either of these respects, it is no defense to her that the bridge tender was also at fault. The claimant defends as it is said principally that a rule may be laid down whether tugs which get no reply from a bridge tender have a right to proceed on the assumption that the draw will be open. It would be impossible to lay down an absolute rule that a

tug discharges its duty to its tow if it proceeds upon this assumption. Every case must depend upon its own circumstances. The best way to arrive at complete justice in such cases will be for the tugs, either as bailees of the tow, to sue the bridge owners, or, if they are sued alone to bring the bridge owners in under rule 59.

Decree affirmed, with interest and costs.